# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESTAN SEFERAJ,<br><br>           Plaintiff,<br><br>           v.<br><br>UNITED STATES OF AMERICA,<br><br>           Defendant. | Case No. CV 21-6928-DMG (AFMx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter is below the Court following a one-day bench trial on January 17, 2023. William A. Percy and Benjamin Dischyan appeared on behalf of Plaintiff Destan Seferaj. Gregory J. Agron and Daniel A. Beck appeared on behalf of the United States of America. Having carefully reviewed the evidence and the arguments of counsel, as presented at trial and in their written submissions, the Court issues the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

# I.

# MOTION FOR JUDGMENT AS A MATTER OF LAW

At the close of trial, the Government moved for judgment as a matter of law, on the basis that Seferaj failed to offer sufficient proof that the car accident at issue in this case actually cased the injuries of which he complains. For the reasons set forth below, the motion for judgment as a matter of law is **DENIED**.

## A. Dr. Nayab's Competence to Offer a Causation Opinion

Seferaj's only evidence of causation was the testimony of his treating chiropractor, Dr. Laila Nayab, who testified that the injuries to Seferaj's back and neck were caused by his accident. But the Government contends that Dr. Nayab, as a chiropractor, is not qualified to offer a medical opinion.

Under California law, "[q]ualifications other than a license to practice medicine may serve to qualify a witness to give a medical opinion." *People v. Catlin*, 26 Cal. 4th 81, 131 (2001), *as modified* (Sept. 26, 2001). In *Catlin*, the California Supreme Court concluded that a toxicologist with "advanced training" in "occupational medicine, physiology, and pharmacology," with extensive professional experience in the field of agricultural poison toxicology, was qualified to testify that poisoning had caused a victim's death. *Id.*; *see also id.* (noting "general trend . . . toward liberalizing the rules relating to the testimonial qualifications of medical experts") (citations omitted); *Hernandez v. Amcord, Inc.*, 215 Cal. App. 4th 659, 675 (2013) (non-M.D. epidemiologist qualified to opine as to causation in asbestos exposure case). Title 16 of the California Code of Regulations, which governs the licensing of chiropractors in the state, authorizes licensed chiropractors to diagnose and treat injuries, "in a manner consistent with chiropractic methods and techniques," "so long as such methods and treatment do not constitute the practice of medicine by exceeding the legal scope of chiropractic practice as set forth in this section." Cal. Code Regs. tit. 16, § 302(a)(3).[1]

---

[1] The section prohibits chiropractors from, for example, delivering children and practicing surgery, dentistry, or optometry. *Id.* at § 302(a)(4).

Neither party has identified a California case, or a federal case applying California law, holding one way or the other as to the question of whether a chiropractor is qualified to offer an opinion as to medical causation in California. Other states' courts have generally concluded, however, that a chiropractor was qualified to offer an opinion as to medical causation in tort cases. *See, e.g.*, *Knapp v. Wilkins*, 786 So. 2d 457, 463 (Ala. 2000), *as modified on denial of reh'g* (Nov. 22, 2000) (concluding under Alabama law that a chiropractor licensed to diagnose patients could testify as to the cause of a patient's injuries); *Shackelford v. Cortec, Inc.*, 8 Ohio App. 3d 418, 419 (1982) (chiropractor's opinion admissible to prove causation under Ohio law where chiropractors licensed to "diagnose" patients); *Whittaker v. Houston*, 888 A.2d 219, 223 (Del. 2005) (same under Delaware law); *but see Totton v. Bukofchan*, 80 N.E.3d 891, 894 (Ind. Ct. App. 2017) (chiropractor not qualified to render opinion as to medical causation, but only because the medical causation issue was particularly complex). Given California's "trend toward liberalizing the rules" regarding medical causation, *Catlin*, 26 Cal. 4th at 131, Dr. Nayab will be permitted to offer an opinion as to medical causation under the circumstances of this case.

**B.  Failure to Consider Other Potential Causes**

The Government argues that Dr. Nayab failed to properly consider other potential causes of Seferaj's injuries, and instead relied only on his assertion that his pain was caused by the accident.

"[I]n a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 402 (1985). "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." *Id.* at 403.

> [A]n expert's conclusory opinion that something did occur, when unaccompanied by a reasoned explanation illuminating how the expert employed his or her superior knowledge and training to connect the facts with

> the ultimate conclusion, does not assist the jury. In this latter circumstance, the jury remains unenlightened in how or why the facts could support the conclusion urged by the expert, and therefore the jury remains unequipped with the tools to decide whether it is more probable than not that the facts do support the conclusion urged by the expert.

*Jennings v. Palomar Pomerado Health Sys., Inc.*, 114 Cal. App. 4th 1108, 1117 (2003).

Dr. Nayab attested that Seferaj reported to her that the force of his accident "caused his head to hit the headrest and his chest to hit the steering wheel," and that he "twisted to the left and back quickly out of fear that the airbag would deploy." Nayab Decl. ¶ 3. Seferaj told her that his symptoms began following the accident. *Id*. He did not report "a significant medical history" for the affected body parts prior to the accident. *Id*. at ¶ 7. Accordingly, Dr. Nayab concluded that the accident was the cause of his symptoms "to a reasonable degree of medical probability." *Id*. Dr. Nayab also reviewed x-rays and ordered an MRI to confirm this diagnosis. *See* Trial Tr. at 61:12–17.

The Government argues that Dr. Nayab's testimony is insufficient to establish the requisite factual basis for her conclusion that Seferaj's injury was caused by the accident. Dr. Nayab testified that she never reviewed Seferaj's medical records. *See* Trial Tr. at 57:1–23. She also testified that she "would be surprised" to learn that Seferaj went to the emergency room repeatedly while treating with her, but that he did not complain of any neck or back pain at the emergency room. *Id*. at 60:23–61:2, 63:19–64:6. And she acknowledged that the disc degeneration noted in her imaging could also have been caused by wear and tear over time, including by lifting heavy objects. *Id*. at 70:3–71:6.

Although Dr. Nayab's reasoning regarding causation is brief, the Court concludes that it is sufficient to establish causation. Dr. Nayab considered Seferaj's description of the accident, an x-ray and MRI, and the fact that Seferaj did not have a history of pain in his back or neck prior to the accident, to reach her conclusion that Seferaj's injuries were probably caused by the accident. The Government suggests that Dr. Nayab failed to consider the possibility that Seferaj's injuries were caused by deterioration and repetitive

stress, rather than the accident. But Dr. Nayab specifically states that she considered the fact that Seferaj had not previously complained of back or neck pain in making her diagnosis. This plausibly indicates that she did, in fact, consider the possibility that Seferaj's injuries predated the accident, and that she rejected that possible explanation. "Reasonable medical probability" does not require proving causation to a certainty. *Beebe v. Wonderful Pistachios & Almonds LLC*, 92 Cal. App. 5th 351, 370 (2023) (citations omitted). Dr. Nayab reasonably considered other potential causes before concluding that Seferaj's injuries were caused by the accident.

## II.
## FINDINGS OF FACT[2]

**A. Accident**

1. The accident that is the subject of this action took place in the early afternoon on March 20, 2020. Seferaj Depo. at 22: 3–11; Leyva Decl. ¶ 5.

2. At the time of the accident, Seferaj was sitting in the driver's seat of his 1992 Lexus sedan. Seferaj Depo. at 23:20–25.

3. Seferaj's car was parked facing westbound on the north side of West 116th Street near Crenshaw Boulevard in Inglewood, California. *See* Final Pretrial Conference Order ("FPTCO") ¶ 5(2) [Doc. # 37] (car was parked); Seferaj Depo. at 25:25–26:6; *id*. at 35:6–13.

4. Seferaj parked his vehicle with the intention of visiting a nearby bank and was seated in his vehicle for several minutes before attempting to exit. Seferaj Depo. at 23:5–11 (intended to visit bank); *id*. at 24:23–25:6.

5. At the time of the accident, Jesus Leyva was employed by the United States Postal Service ("USPS") as a letter carrier and was driving a USPS right-drive long-life vehicle ("LLV"). Leyva Decl. ¶¶ 1, 6.

6. Seferaj checked his side and rearview mirrors, and opened the driver's side door

---
[2] To the extent any of the Court's findings of fact may be considered conclusions of law or vice versa, they are so deemed.

1  "slightly." Seferaj Depo. at 30:18–31:4; *id.* at 31:11–19; Trial Tr. at 21:17–23.

2      7. Seferaj did not physically turn to look behind him for oncoming traffic before opening his door. Trial Tr. at 21:10–16.

4      8. Seferaj then turned and spent approximately five seconds gathering his phone, phone charger, keys, documents, and other belongings to take with him. Seferaj Depo. at 26:7–27:2; *id.* at 28:6–18; *id.* at 28:23–29:3; *id.* at 32:11–15; Trial Tr. at 21:20–22:7.

7      9. Then, without checking for oncoming traffic again, Seferaj further opened his driver's side door. Seferaj Depo. at 31:5–10.

9      10. Leyva had been delivering mail by driving this same route for approximately 15 years. Leyva Decl. ¶ 8.

11      11. Leyva had never had a previous accident during his career with the USPS. Leyva Decl. ¶ 3.

13      12. Leyva stopped for a red light at the intersection of 116th Street and Crenshaw Boulevard before proceeding onto West 116th Street at approximately 25 miles per hour. Leyva Decl. ¶ 9.

16      13. Leyva was driving westbound on West 116th Street where he collided with Seferaj's open passenger door. Leyva Decl. ¶ 11.

18      14. The postal truck struck the driver's door at the bumper level, damaging it. Seferaj Depo. at 45:17–20; *id.* at 47:9–17.

20      15. Seferaj did not see the oncoming postal truck prior to the collision. Seferaj Depo. at 30:18–31:4.

22      16. Seferaj did not exit his vehicle prior to the collision, and was not himself physically struck by the postal truck. Seferaj Depo. at 26:17–22.

**B.    Injury and Treatment**

25      17. Seferaj had no pre-existing back, neck or leg injuries at the time of the accident. *See* Seferaj Depo. at 59:12–60:7; *id.* at 63:22–25.

27      18. Seferaj began to experience back, neck, and leg pain shortly after the accident. Seferaj Depo. at 39:25–41:4; 65:8–21.

19. Seferaj treated with chiropractor Laila Nayab, D.C. from April 30, 2020 to February 22, 2021 for his complaints of pain as a result of the accident. Seferaj Depo. at 75:5–11; Nayab Decl. ¶¶ 3, 5.

20. Seferaj incurred medical expenses in the amount of $6,217.69 for his 36 visits to Dr. Nayab. Nayab Decl. ¶ 8.

21. At the conclusion of Dr. Nayab's treatment of Seferaj, Seferaj had improved but was still experiencing pain. Seferaj Depo. at 78:1–7.

22. Seferaj continues to experience pain in his lower back today as a result of the accident. Seferaj Depo. at 71:19–72:3; *id*. at 87:12–89:11; *see also* Trial Tr. at 13:18–19.

## III.
## CONCLUSIONS OF LAW

1. Seferaj asserts a single claim for violation of the Federal Tort Claims Act ("FTCA"): that Leyva negligently operated his vehicle, resulting in Seferaj's injuries.

2. In an action brought pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*, the law of the place where the allegedly negligent act occurred governs the substantive law applied. *See* 28 U.S.C. § 1346(b). In this case, California law applies because the accident occurred in California.

3. To have a cognizable claim under the FTCA, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Dalehite v. United States*, 346 U.S. 15, 18 (1953).

4. Under the FTCA, the United States is liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. 28 U.S.C. § 2674.

5. To establish a claim for negligence under California law, a plaintiff must prove "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th

913, 917 (1996).

### A. Leyva's Negligence

6. Leyva had a duty to use ordinary care in the operation of his vehicle. *See Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) ("[E]ach person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances.'").

7. Leyva attests that Seferaj's door suddenly opened when Seferaj was right next to it, and that despite his attempt to brake, the mirror of the LLV struck Seferaj's door. *See* Leyva Decl. ¶¶ 10–11. The Court does not find this explanation to be credible, for two reasons. First, it is undisputed that Seferaj opened his door *before* turning back into the car to retrieve his belongings. The Court does not find it plausible that Seferaj's door was open so little that Levya would not have seen it with sufficient time to apply the brake. Second, the photographic evidence of the damage to Seferaj's car is not consistent with it being hit by a mirror. Instead, the photographs show damage to Seferaj's car at the bumper level. *See* Exs. 7-003, 7-005. A photograph introduced by Seferaj also shows damage to the bumper of the LLV that appears to be consistent with the bumper of the LLV hitting Seferaj's car. Ex. 7-008. Common sense also indicates that a car door cannot be open merely "a few inches" on its own without something propping it open. Seferaj did not prop open the car door with either his hand or his leg. Because the Court finds that Seferaj's door was open more than a few inches for at least five seconds before the accident, Leyva's failure to observe Seferaj's open car door was a breach of the duty of care.

8. The bumper of the LLV extends approximately five inches beyond the edge of the LLV. *See* Ex. 7-008; *see also* Trial Tr. at 79:21–23. This indicates that Leyva was driving his LLV very close to adjacent parked cars. Leyva's failure to keep a safe distance from parked cars was also a breach of the duty of care.

9. The Government will be liable for Seferaj's injuries if Leyva's breach was a substantial factor in causing those injuries. *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997), *as modified on denial of reh'g* (Oct. 22, 1997).

10. Leyva's negligence was a substantial factor in causing Seferaj's injuries. As discussed above, Dr. Nayab concluded, based on Seferaj's reports of his medical history, Seferaj's report of the accident, and her review of x-rays and an MRI, that Seferaj's injury was the result of the accident. Dr. Nayab's testimony is competent to establish causation. And the Court concludes that it does establish causation by a preponderance of the evidence. Although the Government questions whether Dr. Nayab should have relied on Seferaj's own representations about his medical history, there is no evidence in the record that Seferaj had back or neck pain before the accident. This supports Seferaj's arguments in favor of causation.

11. Seferaj has also successfully established damages by a preponderance of the evidence. Although the Government presented evidence that Seferaj repeatedly sought treatment in the emergency room for other ailments, but not for this one, the Court is not persuaded that this additional evidence undermines Seferaj's testimony regarding his pain. Moreover, Seferaj has incurred medical expenses in treating his pain, in the amount of $6,217.69.

**B.     Seferaj's Negligence**

12. Seferaj also had a duty to use ordinary care in the operation of his vehicle. *See id.*

13. California law provides that "[n]o person shall open the door of a vehicle on the side available to moving traffic unless it is reasonably safe to do so and can be done without interfering with the movement of such traffic, nor shall any person leave a door open on the side of a vehicle available to moving traffic for a period of time longer than necessary to load or unload passengers." Cal. Veh. Code § 22517.

14. Seferaj breached his duty to use ordinary care in operating his vehicle by opening his car door before he was ready to exit the vehicle.

15. Seferaj's own negligence, without which his injuries would not have occurred, was also a substantial factor in causing his injuries.

### C. Damages

16. "The comparative fault doctrine is designed to permit the trier of fact to consider all relevant criteria in apportioning liability . . . to arrive at an equitable apportionment or allocation of loss." *Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1285 (2013), *as modified on denial of reh'g* (Nov. 27, 2013).

17. Because Seferaj and Leyva both acted negligently, and because each side appears to have contributed in approximately equal measure to Seferaj's injuries, the Court apportions fault equally as between the parties.

18. California law permits a plaintiff to recover for past medical expenses that were both actually incurred and reasonable. *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 555 (2011); *see also Williams v. The Pep Boys Manny Moe & Jack of California*, 27 Cal. App. 5th 225, 237 (2018) (citing *Howell*, 52 Cal. 4th at 551) ("[A]ny reasonable charges for treatment the injured person has paid or, having incurred, still owes the medical provider are recoverable as economic damages.").[3] Seferaj incurred $6,217.69 in medical expenses. This amount, consisting of approximately $173 per visit for Seferaj's 36 visits, is reasonable, and Dr. Nayab attests it was necessary to treat his symptoms. Nayab Decl. ¶ 6. There is no evidence to the contrary. Accordingly, the Court concludes that Seferaj's medical expenses were necessary and reasonable.

19. In California, a plaintiff who has established liability may recover noneconomic damages for a wide variety of harms, including emotional distress and pain and suffering, which may include not only physical pain but also "fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal." *Capelouto v. Kaiser Found. Hosps.*, 7 Cal. 3d 889, 892–93 (1972). The test for

---

[3] Contrary to the Government's argument, California law does not hold that medical bills are *never* evidence of the reasonable value of medical services, only that they may not necessarily prove the reasonable value of medical services if, for example, the amount ultimately accepted by the provider was actually less than the amount billed. *See, e.g., Corenbaum v. Lampkin*, 215 Cal. App. 4th 1308, 1327 (2013), *as modified* (May 13, 2013) ("Evidence of the amount that a medical provider accepted as full payment, pursuant to prior agreement, is relevant to the amount of damages for past medical expenses and is admissible for that purpose, assuming it satisfies other rules of evidence.").

determining noneconomic damages "is one of reasonable compensation." *Hilliard v. A. H. Robins Co.*, 148 Cal. App. 3d 374, 412 (1983). In this case, Seferaj testified that he experienced pain beginning shortly after the incident. Although his treatment with Dr. Nayab reduced his pain, he testified at trial that this pain still interferes with his sleep at night. Seferaj's counsel suggested at trial that $18,000, or a triple multiplier of Seferaj's medical bills, would constitute appropriate damages for Seferaj's past pain and suffering. The Court agrees that this is a reasonable valuation of Seferaj's past pain and suffering.

20. A plaintiff may recover for future noneconomic damages that are reasonably certain to occur. *Bellman v. San Francisco High Sch. Dist.*, 11 Cal. 2d 576, 588 (1938); *Garcia v. Duro Dyne Corp.*, 156 Cal. App. 4th 92, 97 (2007). Although Seferaj continues to experience pain several years after the incident, he presented no other evidence of the likelihood that his pain will persist. Accordingly, the Court declines to award damages for future noneconomic harm.

## IV.
## CONCLUSION

In light of the foregoing, the Government's motion for judgment as a matter of law is **DENIED**. The Court finds that Seferaj's damages include $6,217.69 in medical expenses, and $18,000 in past noneconomic harm, for a total of $24,217.69. The Government shall be liable for 50% of that amount, for a total of $12,108.85.

**IT IS SO ORDERED.**

DATED: August 28, 2023

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE